NORTHROP *et al. v.* KEIGHLEY *et al.*

*(Circuit Court, W. D. Pennsylvania.* December 10, 1891.)

1. PATENTS FOR INVENTIONS—INFRINGEMENT—METALLIC CEILINGS.

Letters patent No. 158,881, issued January 19, 1875, to Henry Adler, are for a metallic ceiling composed of panels of cold-rolled sheet-iron with turned-up edges, fitted into squares formed of furring strips nailed to the joists, and resting loosely upon fastenings attached to these strips, the edges being covered by a broad cap fastened to the strips. The specifications state that it is the object of the invention to provide for the expansion and contraction of the panels, and that, theretofore, metallic panels had been fastened rigidly to the furring strips. *Held,* that the patent was not infringed by a ceiling composed of panels with flat edges, which were nailed rigidly to the strips, and covered by a cap-piece secured by nails passing between the edges of the panels.

2. SAME—PATENTABLE INVENTION—MECHANICAL ADAPTATION.

Letters patent No. 330,915, issued November 24, 1885, to Albert Northrop, claim: "In a metallic ceiling, the combination, with corrugated sheet-metal panels arranged to form an intervening space between their adjacent sides, and thereby allow of their expansion and contraction in all directions, of a moulding strip overlapping the adjacent edges of the panels and devices passing through the moulding strip between the edges of the panels for securing the strip and panels to the ceiling." *Held,* that this was a mere mechanical adaptation of the Adler invention to the use of corrugated panels, and the patent is therefore void.

In Equity. Suit for infringement of a patent. Bill dismissed.

*W. Bakewell & Sons,* for complainants.

*D. F. Patterson,* for defendants.

REED, J. The bill alleges infringement of letters patent No. 158,881, issued to Henry Adler, January 19, 1875, and now held by complainants, being for an improvement in metallic ceilings. The specification states that it relates to that class of ceilings known as metallic ceilings, "and consists in constructing ceilings in panels, and from black cold-rolled sheet-iron, and in securing the panels in position by means of secreted cleats and caps, or ornamental side and corner pieces, so that the means employed for attaching the metal ceiling to the under side of the rafters are completely hidden from view." The inventor further says:

"Heretofore ceilings of this class have been made from galvanized sheet-iron screwed directly to the girders by screws and similar attachments, which were apparent in the finished panels, and which held the panels rigidly, without allowing for expansion or contraction. The object of my invention is therefore to provide a fastening that will admit of the necessary expansion and contraction of the panel, that will be entirely hidden when the ceiling is finished, and that can be readily and cheaply applied."

And again says:

"Furthermore, the method of attachment, which has been by screwing the panels to the joists direct, did not leave room for the expansion or contraction of the panel, and was such that the fastenings showed in the completed ceilings."

As described by the inventor, the ceiling is constructed by fastening to the joists cleats or furring strips, forming a square or other pattern similar to the panel proposed to be used. The panel, formed of sheet-iron with the edges turned up to form flanges, is then inserted between

the furring strips, and supported in place by small fastenings attached to the cleats, and extending under the flanges of the panels. A cap-piece, broader than the furring strips, and thus extending under the flanges of adjacent panels, is fastened to the furring strip, and conceals it, as well as the edges of the flanges and the small supporting fastenings. At each corner of the panel, where the several cap-pieces surrounding it come together, rosettes or corner pieces are fastened to conceal the joining ends of the cap-piece. If the panel is small and light, the supporting fastenings may be dispensed with, and the flanges of the panels rested directly upon the cap-piece. The panel thus has free play in case of expansion or contraction. The claim alleged to be infringed is as follows: "In combination with the panel, c, the cap-pieces, D, and the corner pieces, E, substantially as and for the purpose specified."

The defendants' ceilings were constructed by fastening to the joists cleats or furring strips in the form desired for the panel. To these strips the panel of sheet-iron (without flanged or turned edges) was nailed securely. Over the adjoining edges of the panels were nailed metal strips or cap-pieces, for the purpose of concealing the joinder of the edges, and at the several corners of the panels were placed rosettes or ornamental corner pieces. It appeared that the purpose of these cap-pieces and corner pieces was simply for ornament, and not support. When the ceiling was completed, the panels were held rigidly in place, no allowance being made for expansion and contraction. Assuming this to be a valid patent, its claims must, in my judgment, be narrowly construed, both in view of the prior state of the art, and the restrictions put upon them by the inventor himself, and it will hence be seen that the essential value of the patent lay in the provision made for expansion and contraction. The combination, "substantially as and for the purpose described," of the panel, the cap-piece, and the corner piece, does not exist in defendants' ceiling. Their ceiling, as put up, fastened rigidly in place, is constructed in the manner stated by the inventor as in use before he invented the improvement described, and which he condemns, with the addition of the cap-piece and rosette for the purpose of concealment of the panel edges and of ornamentation. Such a concealing strip, however, was not new, and had been used prior to the invention in question, and has been in common use in constructions of wood, of which an illustration is the strip used to cover the adjoining pieces of weather-boarding on frame houses, and only in this respect does the defendants' construction resemble the construction described in the patent. There being no infringement, the bill cannot be sustained upon this ground.

It is also alleged, however, that the defendants' ceiling infringes a later patent, being No. 330,915, issued November 24, 1885, to Albert Northrop, the complainants' testator, for a new and useful improvement in metallic ceilings. The ceiling constructed in accordance with the specification of this patent consists of panels—

"Preferably made of corrugated sheet-iron, in order to stiffen the sheets and provide for their expansion and contraction in one direction, that is, in

a direction transverse to the length of the corrugations, and to form channels to direct the flow of any water that may find its way upon the upper surface of the panels of the ceiling. These panels are applied to the furring strips in such manner that spaces will be left between their adjacent side edges to allow of the expansion and contraction of the panels, and also to form intervening passages or openings for the escape of water."

These panels are loosely held in place by supporting strips or cap-pieces of metal, made with a central gutter running lengthwise, and which are nailed to the furring strips by nails passing between the adjoining edges of the panels. At the ends of the cap-pieces are placed rosettes to conceal their ends. The specification states:

"From the foregoing it will be observed that the panels are supported in position by the moulding strips, and are allowed free and independent expansion and contraction, and hence will not buckle or wrinkle in use. The corrugations operate to stiffen the panels, and also to form channels to direct the flow of water into the moulding strips, should any leakage occur in the roof or water-pipe. The rosettes serve to conceal the fastening nails, and also serve as receptacles to catch the dripping of water from the upper surface of the ceiling."

It further states:

"I am aware that it is not new to employ flanged panels, and secure them to cleats located between the adjacent edge or by cap-pieces; hence I make no claim to such combination."

The claim alleged to be infringed is:

"In a metallic ceiling, the combination, with corrugated sheet-metal panels, arranged to form an intervening space between their adjacent sides, and thereby allow of their expansion and contraction in all directions, of a moulding strip overlapping the adjacent side edges of the panels, and devices passing through the moulding strip between the edges of the panels for securing the strip and panels to the ceiling."

For substantially the same reasons as stated above, I do not think the defendants' ceiling infringes this patent; but it is unnecessary in the view I take of the patent to speak of the question of infringement at length, or to discuss the testimony in reference to other ceilings, constructed prior to the applications for either of the patents in question. In my judgment the later patent is invalid for lack of invention. The changes made in the construction of ceilings under the Adler patent, in order to construct a ceiling in accordance with the Northrop patent, were such as would suggest themselves to any ordinary mechanic. Corrugated sheet-metal was in common use, and any advantage that it had over flat sheet-metal was well understood. It required no exercise of inventive ability to substitute a panel with flat edges for that with turned edges described in the Adler patent, and the moulding strip and devices passing through it, between the edges of the panels, to secure the panel and the strip to the furring strip or ceiling, as stated in the claim, are those of the Adler ceiling. Plainly, therefore, there is nothing which will sustain the patent. The bill must be dismissed, with costs. Let a decree be prepared accordingly.